## Old Guard Mutual Insurance Co. v. The First National Bank of Columbia, Pa. (No. 2)

*A. W. Reese* and *Robert Ruppin*, for plaintiff.
*Wilson Bucher*, for defendant.

JOHNSTONE, J., November 9, 1956.—Plaintiff in this action in equity filed its complaint in which it is averred that on October 8, 1953, plaintiff issued to Norman H. Clinton and Elizabeth B. Clinton its fire insurance

policy no. 113340 in the sum of $20,000 covering a brick and cement block dwelling and garage in West Hempfield Township, Lancaster County. The policy was a standard fire insurance policy as prescribed by the laws of this Commonwealth, and had attached to it a mortgage clause, also in standard form, providing for payment of any loss or damage to defendant. At the time the said policy was issued defendant held a mortgage in the principal sum of $8,000 against the real estate owned by the said Norman H. Clinton and Elizabeth B. Clinton.

The complaint further avers that the fire insurance policy was automatically cancelled as to the insured by reason of their failure to pay the assessment on the policy. On December 21, 1955, while the policy of insurance was still in force as to defendant, 10 days' notice of cancellation not having been given to defendant, a fire occurred at the premises covered by the policy which resulted in a loss of $1,328.85. The amount of the loss was paid by plaintiff to defendant on April 17, 1956, and plaintiff demanded an assignment of the bond and mortgage held by defendant to the extent of the amount paid under the fire insurance policy. Defendant refused to assign a portion of the bond and mortgage, contrary to the provisions of the policy as interpreted and claimed by plaintiff.

Plaintiff asks that a decree be entered directing defendant to assign to plaintiff a part of the bond and mortgage represented by the payment of the fire loss and restraining defendant from assigning, entering satisfaction for or doing anything which would impair the validity and lien of the bond and mortgage. To plaintiff's complaint, defendant filed preliminary objections in the nature of a demurrer claiming that plaintiff has failed to state a cause of action in its complaint. After oral argument and the submission of briefs, the matter is now before the court to de-

termine whether plaintiff has stated a good cause of action in its complaint.

It appears to the court that there are two questions involved. The first being, under the facts pleaded, is the insurance company-plaintiff entitled to be subrogated to the rights of the mortgagee-defendant against the owners of the real estate covered by the insurance policy and the mortgage? The principle of subrogation is based upon equity. However, the statute which establishes the standard form of insurance policy (The Insurance Company Law of May 17, 1921, P. L. 682, sec. 522, 40 PS §657) places subrogation on the footing of a legal right, which must prevail unless a stronger equity be shown against it: Stoughton v. Manufacturer's Natural Gas Co., 165 Pa. 428. In the case of Wharen v. Markle Banking and Trust Co., 145 Pa. Superior Ct. 99, Judge Hirt stated at page 101: "When the mortgage clause attached to a fire insurance policy is in the standard form, a separate distinct and independent contract results, though included in the owner's policy, insuring the mortgagee's interest, free from the conditions imposed upon the owner, with the same effect as though a separate policy had been delivered by the insurer to the mortgagee." In the present case plaintiff issued a standard form insurance policy with a standard form mortgage clause in favor of defendant. This resulted in a contractual relationship between plaintiff and defendant. The contract is composed of the provisions in the mortgagee clause and such of those in the policy as are essentially applicable to the mortgagee clause and the mortgagee's interest. It does not include all the provisions of the policy, but contains many not included in it. It is no different than it would be were the mortgagee to receive a separate policy free from the conditions imposed on the mortgagors or owners: Miners Savings

Bank of Pittston v. Merchants Fire Insurance Company, 131 Pa. Superior Ct. 21.

One of the provisions in the contract between plaintiff and defendant is that: "Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt. . . ." Plaintiff has alleged in its complaint that the policy of insurance was automatically cancelled as to the owners of the premises covered by the policy because of their failure to pay the assessment on the policy. If this statement be true, and its truthfulness must be assumed under defendant's demurrer, then there would be no liability on the part of plaintiff to pay any loss or damage under the policy to the mortgagor or owner. In order to keep the policy of insurance in force, it is the duty of the owners to pay the assessments as they become due. If the owner fails to pay the assessments, the policy is cancelled and the insurance company is relieved of its liability to pay under the policy. It was only because of the separate contract existing between the insurance company and the mortgagee that the liability under the policy continued as to the mortgagee until the proper notice of cancellation was given. Having discharged its liability under the contract by paying the loss to the mortgagee, the insurance company-plaintiff is entitled to the benefits of subrogation as provided in the contract. Plaintiff has stated facts in its complaint which, if true, would entitle it to be subrogated to the rights of the mortgagee-defendant against the owners of the real estate covered by the insurance and the mortgage.

The second question to be determined is the manner in which the insurance company-plaintiff is entitled to enforce its right of subrogation.

The standard form mortgage clause gives the insurer two options, either subrogation to the extent of the payment made or the payment of the entire principal due on the mortgage and a full assignment and transfer of the mortgage. In this case plaintiff has elected the first option and has demanded subrogation to the extent of the amount paid by it to the mortgagee and a transfer to it of a portion of the bond and mortgage equivalent to the amount paid. Defendant argues that plaintiff is not entitled to a partial assignment, but must pay the entire balance due on the mortgage and accept a full assignment. This argument is obviously contrary to the plain provisions of the mortgage clause, which gives the insurer two options. Defendant also argues that a partial assignment of the mortgage would be improper since the mortgage clause also provides: "No subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of their claim." If a partial assignment were decreed as prayed for, plaintiff and defendant would then become holders of the bond and mortgage in specific proportions. There is nothing novel in such a situation, nor would it in any way prevent the mortgagee-defendant from recovering the amount of its claim which has not already been paid by proceeds of the insurance.

No specific case in point has been cited, nor has the court been able to find any decision holding that under circumstances such as exist here, the insurer is entitled to an assignment of a part of the mortgage. However, in the case of Manley v. Montgomery Bus Co., Inc., 82 Pa. Superior Ct. 530, the court permitted the insurance company to participate in a judgment obtained by the insured. This case was cited with ap-

proval, and followed in Illinois Automobile Insurance Exchange v. Braun, 280 Pa. 550. The contract between plaintiff and defendant indicates that a partial assignment was contemplated where the insurer elected to be subrogated to the extent of the amount paid, since in the other option it refers to a *full* assignment and transfer of the mortgage. In fact, if it were to be decided that plaintiff is not entitled to a partial assignment, the subrogation clause would have no meaning since defendant has no other claim than the bond and mortgage against the owners of the real estate. It seems clear that since plaintiff is entitled to subrogation rights under the contract, and the only claim which defendant has against the owners of the real estate is the bond and mortgage, then a partial assignment of the bond and mortgage to plaintiff is the only practical solution to enforcing its right of subrogation.

Defendant argues that the mortgagee has the right to use the funds received from plaintiff for the purpose of repairing the damage caused to the insured property by the fire. If this were true then the insured would benefit by the payment of the loss, and plaintiff would have no means of recouping its payment under the policy or realizing under its subrogation rights. If, as alleged by plaintiff, the policy of insurance as to the insured was cancelled, then the insured is not entitled to benefit in any way by a payment under the policy. In order to protect defendant from any possible loss in recovering the share of the principal of the mortgage due it, it may be necessary under the terms of the mortgage clause to provide that defendant shall first receive payment out of the sale of the mortgaged premises before plaintiff can receive payment of its portion of the mortgage. In this way defendant could not be hurt, and the clause in the contract between plaintiff and defendant which provides that no

subrogation shall impair the right of the mortgagee to recover the full amount of its claim would be given full meaning. However, it is unnecessary to decide that question at this time since that problem is involved in the remedy which plaintiff seeks and is not involved in determining whether plaintiff is entitled to relief.

And now, November 9, 1956, the preliminary objections in the nature of a demurrer are dismissed, and defendant is given 20 days within which to file an answer to plaintiff's complaint.